UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FOUR STAR BROTHERS, INC.,  
d/b/a TOM BOY SUPERMARKET,

   Plaintiff,

vs.

ALLIED INSURANCE COMPANY,

   Defendant.
_____/

CASE NO. 04-CV-73401-DT  
HON. LAWRENCE P. ZATKOFF

**OPINION AND ORDER**

AT A SESSION of said Court, held in the
United States Courthouse, in the City of Port Huron,
State of Michigan, on January 19, 2006

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

**I. INTRODUCTION**

This matter is before the Court on Defendant's Motion for Summary Judgment. Plaintiff has filed a response, to which Plaintiff has replied. The Court finds that the facts and legal arguments pertinent to the Defendant's Motion are adequately presented in the parties' papers, and the decisional process will not be aided by oral arguments. Therefore, pursuant to E.D. Mich. Local R. 7.1(e)(2), it is hereby ORDERED that the Motion be resolved on the briefs submitted, without this Court entertaining oral arguments. For the reasons that follow, Defendant's Motion for Summary Judgment is GRANTED.

## II. BACKGROUND

Plaintiff owned and operated a grocery store known as Tom Boy Supermarket, located at 4120 Second Street, Detroit, Michigan, on August 14, 2003. At that time, Plaintiff held an insurance policy on the business issued by one of Defendant's companies (AMCO Insurance Company) (the "Policy"). The pertinent Policy provisions are discussed in Section IV below. At or about 4:10 p.m. on August 14, 2003, and for at least the next 24 hours, a blackout occurred in southeastern Michigan and Plaintiff was without the electrical service Detroit Edison had contracted to provide Plaintiff. When electrical service was restored, there was a power surge that caused damage to a computer and two compressors in Plaintiff's store.

As a result of the extended blackout, Plaintiff alleges that it suffered substantial losses of inventory and stock, as well as some equipment. Plaintiff submitted a claim to the Defendant under the Policy for its alleged losses. Defendant paid for Plaintiff's equipment losses, but denied liability for Plaintiff's alleged inventory and stock losses totaling approximately $109,000.

The events leading to the blackout, as well as the causes thereof, were extensively studied by a joint "U.S.-Canada Power System Outage Task Force" (the "Joint Task Force") appointed by the President of the United States and the Prime Minister of Canada. In April 2004, the Joint Task Force issued its "Final Report on the August 14, 2003 Blackout in the United States and Canada: Causes and Recommendations" ("Final Report"). According to the Final Report, the Joint Task Force identified four groups of causes of the blackout: Inadequate System Understanding, Inadequate Situational Awareness, Inadequate Tree Trimming and Inadequate RC (Reliability Coordinator) Diagnostic Support. The Joint Task Force attributed all of these causes to events that occurred outside of Detroit Edison's service territory and none of the equipment owned by Detroit Edison was deemed at fault.

The Michigan Public Service Commission ("MPSC") also assessed the impact of the blackout in Michigan in a "Report on the August 14th Blackout" dated November 2003 (the "MPSC Report"). In the MPSC Report, the MPSC stated:

> Michigan utilities or transmission companies were not the cause of the blackout. All of the events in the two and one-half hours preceding the power surges that occurred at 4:09 p.m. involved the facilities of FirstEnergy and American Electric Power in Ohio. No Michigan utilities or transmission companies were involved in these events. Information involving these events was not shared with Michigan companies prior to the blackout.

MPSC Report at 90.

### III. LEGAL STANDARD

Summary judgment is appropriate only if the answers to the interrogatories, depositions, admissions, and pleadings, combined with any affidavits in support show that no genuine issue as to any material fact remains and that the moving party is entitled to a judgment as a matter of law. *See* FED. R. CIV. P. 56(c). A genuine issue of material fact exists when there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)(citations omitted). In application of this summary judgment standard, the Court must view all materials supplied, including all pleadings, in the light most favorable to the non-moving party. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

The moving party bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record that establish the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial. *See* FED. R. CIV. P. 56(e); *Celotex*, 477 U.S. at 324. The nonmoving party must do more than show that there is some metaphysical doubt as to the material facts. It must present significant probative evidence in support of its opposition to the motion for summary judgment in order to defeat the motion for summary judgment. *See Moore v. Phillip Morris Co.*, 8 F.3d 335, 339-40 (6th Cir. 1993).

## IV.  ANALYSIS

To prevail on its breach of contract claims against Defendant, Plaintiff must prove:

      1.      That a contract existed between Plaintiff and Defendant;

      2.      Defendant breached the obligations it owed Plaintiff under the contract; and

      3.      Plaintiff suffered damages as a result of the breach.

*See In re Brown*, 342 F.3d 620, 628 (6th Cir. 2003).  In this case, there is no dispute that, at the time of the blackout, Plaintiff was covered by the Policy issued by the Defendant. At issue is whether Defendant breached its obligation by denying Plaintiff's claim of loss.

**A.**      **Key Policy Provisions**

The general insuring provisions of the Policy state:

> **A.**      **COVERAGES**
>
> We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

"Covered Property" means "Buildings and Business Personal Property . . ., if a Limit of Insurance is shown in the Declarations for that type of property."  A "Covered Cause of Loss" is defined as follows:

> **3.**      **COVERED CAUSES OF LOSS**
>
> This Coverage Form insures against Risks of Direct Physical Loss unless the loss is:
>
>     a.    Excluded in Section B. EXCLUSIONS;
>
>     b.    Limited in Paragraph A.4. LIMITATIONS in this section; or
>
>     c.    Limited or excluded in Section E. PROPERTY LOSS CONDITIONS or Section G. PROPERTY GENERAL CONDITIONS;
>
> that follow.

One of the exclusions set forth in Section B. provides:

**B.     EXCLUSIONS**

1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other causes or event that contributes concurrently or in any sequence to the loss.

\* \* \* \* \*

e. Off-Premises Services

The failure of power or other utility service supplied to the described premises, however caused, if the failure occurs away from the described premises.

But if failure of power or other utility service results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

**B.     "Off-Premises Services" Exclusion**

In this case, the power failure undisputedly occurred away from the premises (in its response brief, Plaintiff states that Detroit Edison failed to provide Plaintiff with utility services and Plaintiff does not contest that the power failure occurred away from the premises). Defendant contends that the Policy does not cover Plaintiff's losses pursuant to Section B.1.e. of the Policy, *supra*. Defendant further contends that the "Off-Premises Services" exclusion generally operates as a bar to coverage regardless of the cause of the power failure. The Defendant concedes that there is an exception to that exclusion

> if direct physical loss or damage to insured property on or at the store from another, separate and independent 'Covered Cause of Loss' results from the power failure, [in which case] the resulting damage would be covered. For example if the power failure caused a fire at the store, there would be coverage for the fire damage, but not any damage attributable to the power failure.

Defendant relies on two cases in support of its argument. In *Gies v. City of Gering*, 695 N.W.2d 180 (Neb. Ct. App. 2005), the court found that power failure exclusion language identical to the language in the Policy precluded coverage. In *Gies*, a broken cable on a utility transformer several blocks away from the insured's property caused the loss of one phase of the three-phase power being supplied to the insured property. *Id.* at 184. Eventually, the continued operation of

5

several electric motors during the event, referred to as a "single-phase disturbance," caused the electric motors to overheat and stop working. *Id.* The damaged motors were used to power refrigeration equipment. *Id.* The power failure exclusion language at issue in *Gies* is identical to the language in the Policy, including the exception paragraph: "But if failure of power . . . results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss." *See id.* at 184-85. The *Gies* court found that there was no ambiguity in the exclusionary language. *Id.* at 185. The *Gies* court reasoned that the exception to the exclusion "would be applicable if a power failure resulted in any risk of direct physical loss or damage that is neither a limitation nor an exclusion under the terms of the policy and which risk caused loss or damage." *Id.* at 195. The *Gies* court concluded that because the power failure, in that case, did not result in a covered cause of loss, the exception to the exclusion was not applicable. *Id.*

In *Mapletown Foods, Inc. v. Motorists Mut. Ins. Co.*, 662 N.E.2d 48 (Ohio App. 1995), there were two plaintiffs, Mapletown Foods and Noble Bi-Rite, who sought damages under an insurance policy after a power outage caused by a downed wire away from their premises resulted in food spoilage at their grocery stores. The insurance policies at issue provided the plaintiffs with "Business Owners' Special Property Coverage," which coverage was subject to an exclusion section identical to the "Off-Premises Services" exclusion in this case. Noble Bi-Rite also had purchased a special spoilage coverage endorsement of $15,000, on which it was paid. The *Mapletown* court found that the "ordinary meaning [of the exclusion under the Business Owners' Special Property Coverage] is that there is no coverage when the power failure occurs away from the insured's premises, *i.e.*, at the utility's power station or somewhere off the plaintiff's premises." *Id.* at 50. Accordingly, the *Mapletown* court held that the district court had properly denied the plaintiffs' claim for damages under the policies. *Id.*

Defendant therefore advocates that the Court find that the "Off-Premises Services" exclusion provision under the Policy bars any recovery for Plaintiff's loss resulting from the power failure because (1) the language is identical to that contained in the policy involved in *Gies* and *Mapletown*

6

and (2) as in those cases, there is no Covered Cause of Loss which would satisfy the exception to the exclusion. The Court agrees and devotes the remainder of its Opinion to addressing Plaintiff's contentions.

In its response brief, the Plaintiff "absolutely agrees with the Defendants [sic] cited law on this subject." The Plaintiff argues, however, that "[b]y reading the plain language of this exclusion it is clear that if a power failure occurs away from the premises [the damage] is not covered, *unless*[] this power failure 'results in a Covered Cause of Loss.'" (emphasis of Plaintiff). As Plaintiff has not contested that the power failure occurred away from the premises and Plaintiff concedes that the exclusion generally applies when the power failure occurs away from the insured premises, the Court concludes that the "Off-Premises Services" exclusion applies in this case, assuming there is no applicable exception to the exclusion.

The Plaintiff believes that an exception to the "Off-Premises Services" exclusion exists because there is a "Covered Cause of Loss." Plaintiff maintains that the Utility Services-Additional Coverage endorsement it purchased from the Defendant constitutes a "Covered Cause of Loss" under the Policy. The Utility Services-Additional Coverage endorsement provides:

> **A.  COVERAGES**
>
> > We will pay for loss of or damage to the Covered Property described in the Declarations for Utility Services, including loss of "business income" or "extra expense" caused by the interruption of service to the described premises. The interruption must result from direct physical loss or damage by a Covered Cause of Loss to the property described in Paragraph B that follows, if such property is indicated on the Declarations and is located outside of a covered building described in the Declarations.
>
> > \* \* \* \* \*
>
> **B.  UTILITY SERVICES**
>
> > \* \* \* \* \*
>
> > 3.  Power Supply Services, meaning the following types of property supplying electricity, steam or gas to the described premises:
> >
> >     a.  Utility generating plants;

7

     b. Switching stations;
     c. Substations;
     d. Transformers; and
     e. Transmission lines.

    It does not include overhead transmission lines unless stated otherwise in the Declarations.

  Assuming, without deciding, that the Utility Services-Additional Coverage endorsement may constitute an exception to the "Off-Premises Services" exclusion,[1] the Court finds that there is no evidence on the record which would support a claim for coverage under such endorsement. The Plaintiff argues that (i) it can prove that the "Power Supply Services" ceased, and (ii) that those services ceased because the utility generating plants, switching stations, substations, transformers or transmission lines stopped providing power. The Plaintiff contends that loss of power being supplied to Detroit Edison constitutes a direct physical loss to Detroit Edison and the reason why Detroit Edison discontinued supplying electricity is a question of fact to be determined by a jury. The Court finds no merit in Plaintiff's contentions.

  First, the mere cessation of "Power Supply Services" at Detroit Edison and the fact that services to the Plaintiff ceased as a result does not demonstrate a direct physical loss. Second, the evidence on the record does not support Plaintiff's argument that there was a direct physical loss. As noted above, the Joint Task Force and the MPSC (as well as the Defendant's expert) have concluded that the widespread area power outage that occurred on August 14, 2003, was not caused by any "direct physical loss or damage" to property owned by Detroit Edison. Conversely, the Plaintiff not set forth any evidence that would contradict the foregoing conclusions to create a genuine issue of material fact as to whether the August 14th power outage was caused by a physical

---

[1] The Defendant argues that the Plaintiff is mistaken in attempting to apply the Utility Services-Additional Coverage endorsement as an exception to the "Off-Premises Services" exclusion when the two coverages are materially different and must be independently construed (i.e., the endorsement cannot be an exception to the "Off-Premises Services" exclusion). As the Court concludes that there are no facts which would support a finding of entitlement to recovery under Utility Services-Additional Coverage endorsement in this case (even if such endorsement could constitute an exception to the "Off-Premises Services" exclusion), the Court finds it unnecessary to resolve this issue.

8

loss or damage to Detroit Edison property. Plaintiff's reliance on "rupture disks" in the MPSC Report as evidence of direct physical loss to Detroit Edison equipment which resulted in Plaintiff's loss of power is misplaced. As the MPSC Report states, "the presence of failed rupture disks does not, in itself, indicate a problem that needs to be corrected. Rupture disks are a design feature - they are intended to fail under certain conditions, thereby avoiding more serious damage to the equipment." (MSPC Report at 63). As such, the equipment is designed to detect voltage fluctuations and "trip off" to protect the system from damage. (Joint Task Force Final Report at 73). Consequently, the only facts on the record demonstrate that it was the engaging of the protective equipment that caused the Plaintiff to lose power, not that there was a direct physical loss to Detroit Edison equipment.

Third, even if the Court assumed there was a direct physical loss to the Detroit Edison equipment, Plaintiff has failed to set forth any facts or argument demonstrating how such direct physical loss or damage *resulted from* a Covered Cause of Loss to the property, as required by Section A. of the Utility Services-Additional Coverage endorsement. As the Defendant argues, the Utility Services-Additional Coverage endorsement would apply only if the power failure is preceded by ***and results from*** direct physical loss or damage by a covered cause of loss to property of one of the Plaintiff's service providers. For example, the endorsement would apply if Detroit Edison's property suffered a direct physical loss or damage by a windstorm (a Covered Cause of Loss) and, thereafter, electrical service from Detroit Edison to the Plaintiff's store was interrupted due to such windstorm damage and Plaintiff's perishable goods spoiled.

Neither the Joint Task Force Final Report nor the MPSC Report can be interpreted as concluding that any loss suffered by the Plaintiff was caused by a "Covered Cause of Loss." Moreover, the Plaintiff has not set forth any evidence that would create a genuine issue of material fact as to whether any loss suffered by Plaintiff is attributable to a "Covered Cause of Loss." In fact, nothing in the record demonstrates there was a "Covered Cause of Loss" at all. As such, there was no antecedent loss, nor any damage to Detroit Edison's property that was the result of a covered

9

cause of loss such that the Utility Services-Additional Coverage endorsement would be triggered.

For the reasons set forth above, the Court finds that (1) the Utility Services-Additional Coverage endorsement does not entitle Plaintiff to coverage under the Policy, (2) the "Off-Premises Services" exclusion precludes coverage for all of Plaintiff's losses because the failure of power occurred away from Plaintiff's premises and did not result in a Covered Cause of Loss, and (3) there is no applicable exception to the "Off-Premises Services" exclusion.  Accordingly, the Court grants Defendant's Motion for Summary Judgment.

## V.  CONCLUSION

Accordingly, and for the reasons set forth above, Defendant's Motion for Summary Judgment is GRANTED and the Plaintiff's Complaint shall be DISMISSED WITH PREJUDICE. Judgment shall be entered accordingly.

IT IS SO ORDERED.

s/Lawrence P. Zatkoff
LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

Dated:  January 19, 2006

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on January 19, 2006.

s/Marie E. Verlinde
Case Manager
(810) 984-3290